IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLAUDE ANDERSON,<br><br>　　　　　　　Petitioner,<br><br>vs.<br><br>BRANDON SMITH, Greene Correctional Facility,<br><br>　　　　　　　Respondent. | No. 9:15-cv-01138-JKS<br><br>MEMORANDUM DECISION |

Claude Anderson, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Anderson is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Greene Correctional Facility. Respondent has answered the Petition, and Anderson has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On October 4, 2010, Anderson was charged with two counts of second-degree assault, aggravated criminal contempt, first-degree criminal contempt, and two counts of second-degree menacing. On April 5, 2011, Anderson was also charged with first-degree criminal contempt for disobeying the order of protection by having contact with the victim while in custody at the Schenectady County Jail. On direct appeal of his conviction, the Appellate Division of the New York Supreme Court recounted the following facts underlying the charges against Anderson:

> In August 2010, [Anderson] visited his paramour, Kimmarie Stokes, in an apartment in the City of Schenectady, Schenectady County where Stokes resided with her roommates, Melvin Moore and Marion Little. Little stepped outside the apartment, and shortly thereafter an altercation occurred, resulting in both Moore and Stokes being struck in the head with a baseball bat. Little saw [Anderson] run out of the residence, followed by Stokes, who was

bleeding from the head. Stokes told Little that Moore had also been injured. Upon entering the apartment, Little found Moore unconscious and called 911. [Anderson] was no longer at the scene when police arrived, but he later identified himself to law enforcement officers and was arrested.

[Anderson] was indicted for various offenses, including contempt charges arising from an order of protection already in effect that required him to refrain from illegal contact with Stokes. A new order of protection was issued that prohibited [Anderson] from all direct or indirect contact with Stokes. Thereafter, [Anderson] contacted Stokes by telephone from jail, resulting in a second indictment and a new contempt charge.

*Anderson*, 981 N.Y.S.2d 200, 203 (N.Y. App. Div. Feb. 27, 2014).

Anderson was incarcerated throughout the period between his arrest and the trial, which commenced on January 23, 2012. The initial delay was due to conflicts in Anderson's legal representations, which was discovered after the People declared trial-readiness in October 2010, and frustrated attempts to assign substitute counsel. The efforts to substitute counsel were still underway in April 2011 when the second indictment was filed. Substitute counsel was appointed within a few days, Anderson was arraigned on the second indictment, and the People again declared readiness. Less than two months later, Stokes died from causes unrelated to Anderson's actions. Anderson moved to dismiss his indictments on New York Criminal Procedure Law ("CPL") § 30.30[1] grounds, alleging that he had been in jail for 17 months and that his case was prejudiced by Stokes' death. The trial court orally denied the motion.

On January 23, 2012, Anderson proceeded to a jury trial. Moore and Little testified as eyewitnesses of the incident. The court also admitted, over defense objection, statements Stokes made to law enforcement resulting from a 911 call placed after the incident. Anderson's call to Stokes from the jail was also placed into evidence, as was an in-car video recording of Anderson

---

[1] New York's speedy trial statute requires that the prosecution announce their readiness for trial within six months of the commencement of the action. N.Y. CRIM. PROC. LAW § 30.30(1)(a).

telling the arresting offices that Stokes and Moore tried to rob him, which caused him to "[take the bat] from [Moore] and whoop his ass" and hit Stokes when she attempted to run away with his money.

Upon conclusion of trial, Anderson was convicted of second-degree assault (two counts), aggravated criminal contempt, first-degree criminal contempt (two counts), and second-degree menacing. He was subsequently sentenced to 5 years' imprisonment with 3 years of post-release supervision for his second-degree assault against Stokes and a consecutive term of 4 years' imprisonment and 3 years of post-release for his second-degree assault of Moore. Anderson also received a concurrent imprisonment term of $2\frac{1}{3}$ to 7 years for the aggravated criminal contempt conviction and $1\frac{1}{3}$ to 4 years for the first-degree criminal contempt conviction. He additionally received time served for the menacing charge.

Through counsel, Anderson appealed his conviction, arguing that: 1) the trial court erred in admitting evidence of Anderson's prior assault conviction and temporary order of protection; 2) the court erred in refusing to admit letters written by the deceased victim Stokes; 3) the trial judge acted improperly and denied Anderson a fair trial by interjecting himself in witness questioning; 4) the court erred in denying Anderson's application for a justification charge as to Stokes; 5) the recording of Anderson's jail call to Stokes was not properly authenticated and thus improperly admitted; 6) Stokes' statements to law enforcement after the incident were improperly admitted; and 7) Anderson was denied his right to a speedy trial. The Appellate Division unanimously affirmed the judgment against Anderson in a reasoned opinion issued on February 27, 2014. *Anderson*, 981 N.Y.S.2d at 207. The New York Court of Appeals denied leave to appeal on April 22, 2014. *People v. Anderson*, 9 N.E.3d 912, 912 (N.Y. 2014).

While his leave application was pending, Anderson moved in the county court to vacate his conviction pursuant to CPL § 440.10. In that *pro se* filing, Anderson asserted that: 1) trial counsel was ineffective because he failed to investigate and present evidence that Anderson was acting in self-defense or intoxicated and did not argue involuntariness of post-arrest statements; and 2) newly discovered evidence in the form of medical records of an MRI showing extensive damage to Anderson's shoulder supported his claim that he was assaulted and acted in self defense. The superior court denied the motion, holding that, since the issues Anderson raised as part of his ineffective assistance of counsel claim were part of the trial record, his failure to raise the ineffective assistance claim on direct appeal mandated denial under CPL § 440.10(2)(c). The court likewise rejected Anderson's medical evidence claim after concluding that it was not newly discovered evidence. The court reasoned that "[t]he only record of the injury occurring on the date of the crimes charged is the self-reporting of the defendant to the doctor three years later." The court additionally found that, "even if this evidence were introduced to the jury, it would not have created a probability that a more favorable verdict would have been rendered." Anderson moved the Appellate Division for leave to appeal the § 440.10 denial, which was denied without comment on August 3, 2015.

Anderson then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on September 17, 2015.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Anderson argues that trial counsel was ineffective for failing to: 1) investigate and present Anderson's medical records to support his claim that he acted in self defense; 2) request that the trial court instruct the jury on an intoxication defense;

4

and 3) argue that Anderson's statements to law enforcement were involuntary. He also appears to argue that medical records showing extensive damage to his shoulder constitutes newly discovered evidence warranting reversal of his conviction.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

5

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Anderson has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*,

342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).

## IV. DISCUSSION

Grounds 1-3.  *Ineffective Assistance of Counsel*

Anderson first argues that trial counsel rendered ineffective assistance for a number of reasons. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Anderson must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

7

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view

8

the New York standard as being more favorable or generous to defendants than the federal standard. *Id*. at 125.

Anderson's ineffective assistance claim must fail, however, even under the more favorable New York standard. As an initial matter, review of this claim is barred by the state court's adequate and independent finding of a procedural default. "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris*, 489 U.S. at 262. In finding this claim unpreserved for appellate review, the trial court relied upon CPL § 440.10(2)(c), which requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record upon which to base such an appeal. The purpose of the rule set forth in CPL § 440.10(2)(c) "is to prevent CPL 440.10 from being employed as a substitute for direct appeal when [the] defendant was in a position to raise an issue on appeal . . . or could readily have raised it on appeal but failed to do so." *People v. Cooks*, 491 N.E.2d 676, 678 (N.Y. 1986) (citations omitted). Federal courts in this Circuit have consistently held that where a state court concluded that a petitioner's claim raised in a CPL § 440.10 was procedurally barred by CPL § 440.10(2)(c), and the claim was indeed fully developed in the trial record, the petitioner has also defaulted that claim on federal habeas review. *See Sweet v. Bennett*, 353 F.3d 135, 139-41 (2d Cir. 2003); *McCall v. Rivera*, 965 F. Supp. 2d 311, 334-35 (S.D.N.Y. 2013); *Hogan v. West*, 448 F. Supp. 2d 496, 506-07 (W.D.N.Y. 2006). Because Anderson has failed to assert cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of justice, his claim is procedurally defaulted from review by this Court. *Sweet*, 353 F.3d at 141.

9

Moreover, Anderson's claim fails on the merits. Although Anderson faults counsel for failing to present medical records in support of his self-defense theory, as the county court concluded, "even if [the medical evidence] were introduced to the jury, it would not have created a probability that a more favorable verdict would have been rendered." The record, which includes evidence from the 911 call and eyewitness testimony as well as Anderson's own statements to law enforcement about beating Moore and Stokes after thwarting a purported attempt to rob him, fully supports this conclusion. Indeed, introducing the medical evidence could have harmed Anderson's case by highlighting the discrepancy in severity between Anderson's relatively-minor injuries and the significant injuries suffered by the victim.

Nor can Anderson show that counsel was ineffective for failing to pursue an intoxication defense. He has not proffered any sworn affidavits or other evidence showing what counsel did or did not do in pursuing an intoxication defense and thus cannot prevail on any related contention that counsel was ineffective for failing to advise or consult with him on those defenses. *See St. Jean v. United States*, No. 06-CR-414, 2008 WL 4415170, at *2 (N.D.N.Y. Sept. 23, 2008) ("Broad, generalized claims of an attorney's failure to pursue a defense are insufficient to sustain a claim of ineffective assistance of counsel under the first prong of the *Strickland* test."). The record reflects that defense counsel reasonably chose to pursue a self-defense theory. Under New York law, intoxication is not a defense to a crime but may negate an element of the offense charged. *See* N.Y. PENAL LAW § 15.25. Here, Anderson's statements and testimony demonstrate that he was fully aware of what he was doing during the incident. Counsel cannot be faulted for failing to request a charge that the evidence would not support. *See Swail v. Hunt*, 742 F. Supp. 2d 352, 366 (W.D.N.Y. 2010) (Petitioner had "not established that he had a colorable defense of intoxication, and so he

could not have been prejudiced by trial counsel's failure to raise a . . . defense that had no realistic likelihood of success.").

Finally, Anderson cannot establish that counsel was ineffective for failing to argue that his statements to the police were involuntarily made. Notably, the statements were recorded by a patrol video, which was admitted as an exhibit, and the jury was able to observe for itself the conditions under which the statements were made. When cross-examined about the recording, Anderson denied that his statements on the recording were accurate, but stated only, "I don't know what I said. I was upset, I was drunk." Anderson fails to provide any support for his assertion that the statements were the product of undue coercion or otherwise involuntarily made. Anderson's ineffective assistance claim therefore fails.

Ground 2.    *Actual Innocence*

Although not entirely clear, Anderson's ineffective assistance claim appears to also re-raise his claim, raised to the state courts on habeas review, that medical records showing that he was diagnosed in 2013 with a torn rotator cuff proves that he had been injured during the 2010 confrontation and was therefore justified in defending himself against Moore and Stokes. According to Anderson, the records constitute newly-discovered evidence warranting reversal of his conviction.

While a federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review, *Schlup*, 513 U.S. at 326, or to overcome the AEDPA's one-year statute of limitations, *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), the Supreme Court has not resolved whether a non-capital prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence, *McQuiggin*, 133 S.Ct. at 1931; *see House v. Bell*, 547 U.S. 518, 554-55 (2006); *Dist. Attorney's Office v. Osborne*, 557 U.S. 52, 71-72 (2009). The Supreme Court has

instead declined to answer the question, noting that where a "[p]etitioner has failed to make a persuasive showing of actual innocence[,] . . . the Court has no reason to pass on, and appropriately reserves, the question whether federal courts may entertain convincing claims of actual innocence." *Herrera v. Collins*, 506 U.S. 390, 427 (1993) (O'Connor, J., concurring). Although the Second Circuit has also not ruled on whether a claim of actual innocence is cognizable on habeas review, *see Friedman v. Rehal*, 618 F.3d 142, 159 (2d Cir. 2010) (citing *Osborne*, 557 U.S. at 71, and noting that whether an actual innocence claim is cognizable is an open question), it has "come close" to granting habeas relief on grounds of actual innocence, *see DiMattina v. United States*, 949 F. Supp. 2d 387, 417 (E.D.N.Y. 2013) (citing cases).

Assuming, but not deciding, that a freestanding actual innocence claim is cognizable in a § 2254 proceeding, the Supreme Court has described the threshold showing of evidence as "extraordinarily high." *Herrera*, 506 U.S. at 417. "The sequence of the Court's decisions in *Herrara* and *Schlup*—first leaving unresolved the status of freestanding claims and then establishing the gateway standard—implies at the least that *Herrara* requires more convincing proof of innocence than *Schlup*." *House*, 547 U.S. at 555.

Measured against this standard, Anderson has fallen short of establishing his actual innocence. The purported value of the medical evidence fails to meet this demanding standard because Anderson cannot show by clear and convincing evidence that no reasonable juror would have found him guilty had he or she been presented with this evidence. *See Schlup*, 513 U.S. at 327. The state habeas court's conclusion that the evidence "would not have created a probability that a more favorable verdict would have been rendered" is both reasonable and fully supported by the record. Anderson is not entitled to relief on this claim either.

# V. CONCLUSION

Anderson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of Court is directed to enter judgment accordingly.

Dated: August 2, 2017.

                                                /s/ James K. Singleton, Jr.
                                                JAMES K. SINGLETON, JR.
                                                Senior United States District Judge